KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
MICHAEL J. KUMP (SBN 100983)
  mkump@kwikalaw.com
GREGORY P. KORN (SBN 205306)
  gkorn@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiffs
KIMSAPRINCESS, INC. and
KIM KARDASHIAN WEST

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KIMSAPRINCESS, INC.; and KIM KARDASHIAN WEST, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> MISSGUIDED USA (FINANCE) INC., a Delaware corporation; and MISSGUIDED LIMITED, a United Kingdom corporation of unknown form, <br><br> Defendants. | Case No. 2:19-CV-01258 VAP (JEMx) <br><br> **NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Declarations of Gregory Korn, Kim Kardashian West, and Todd Wilson filed contemporaneously herewith] <br><br> Date: June 10, 2019 <br> Time: 2:00 p.m. <br> Crtrm.: 8A |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**TO THE COURT:**

   **PLEASE TAKE NOTICE** that on June 10, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 8A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Kim Kardashian West and Kimsaprincess, Inc. ("Plaintiffs") will and hereby do apply (1) for entry of default against Defendant Missguided Limited, and (2) for entry of default judgment against both Defendants Missguided Limited and Missguided USA (Finance), Inc. pursuant to Fed. R. Civ. P. 55(b) and L.R. 55-1. Plaintiffs seek a default judgment comprising (i) compensatory damages in the amount of Five Million Dollars ($5,000,000), (ii) attorneys' fees in the amount of $103,600, and (iii) a permanent injunction in the form submitted herewith.

   Good cause exists for the entry of default and default judgment in accordance with Fed. R. Civ. 55 and L.R. 55-1. Both Defendants were properly served (Dkt. Nos. 10, 14), and neither has responded to the Complaint. The Clerk of the Court entered the default of Missguided USA (Finance), Inc. as to the Complaint on March 29, 2019. (Dkt. No. 12.) Plaintiffs have requested entry of default against Missguided Limited, which request has been referred to the Court by the Clerk of the Court because the defendant is a foreign entity (Dkt. Nos. 18).

   Defendants are not minors or incompetent persons and are not subject to the Servicemembers Civil Relief Act, 50 U.S.C. § 521. (*See* Declaration of Gregory Korn, ¶ 2.)

   Counsel for Plaintiffs, Gregory Korn, has communicated in writing and over the telephone with Adam Morallee, an attorney at Brandsmiths in London, England, who identified himself as an attorney representing Defendants. (Korn Decl., ¶¶ 3-4.) The parties' counsel discussed the filing of the Complaint in this action and Mr. Morallee's potential acceptance of service thereof. (*Id.*) Mr. Morallee indicated that he would not accept service, and he stated to Mr. Korn that Defendants would not be responding to the Complaint. (*Id.*) On April 30, 2019, Mr. Korn provided written

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  notice to Mr. Morallee that this application was being filed, and that Plaintiffs were

2  seeking compensatory damages in the amount of Five Million Dollars ($5,000,000)

3  and attorneys' fees in the amount of $103,600. (*See* Korn Decl., ¶ 5, Ex. 2.)

4       This Motion for Entry of Default Judgment is based on this notice of motion

5  and motion, the attached memorandum of points and authorities, the accompanying

6  declarations of Kim Kardashian West, Todd Wilson, and Gregory Korn, all papers

7  and pleadings on file in this action, and on such other and further evidence and

8  argument as the Court may lawfully consider in the exercise of its discretion.

9

10  DATED: May 3, 2019        Respctfully submitted,

11

12            KINSELLA WEITZMAN ISER
          KUMP & ALDISERT LLP

13

14

15            By:    */s/ Michael J. Kump*

16            Michael J. Kump

17            Attorneys for Plaintiffs
          KIMSAPRINCESS, INC. and

18            KIM KARDASHIAN WEST

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

   A.   Kardashian's Success And Social Media Reach ................................ 2

   B.   The Unauthorized Use Of Kardashian's Marks And Images. ............... 3

   C.   Missguided Has *Strategically* Defaulted In This Case. ...................... 7

III. LEGAL STANDARD .............................................................................. 8

IV.  ARGUMENT .......................................................................................... 9

   A.   Plaintiffs Satisfy The Requirements For Entry Of A Default
Judgment. ........................................................................................ 9

      1.   Subject Matter Jurisdiction. ..................................................... 9

      2.   Personal Jurisdiction. .............................................................. 9

      3.   Fed. R. Civ. P. 55 and L.R. 55-1. ........................................... 13

   B.   The Entry Of Default Judgment Is Warranted. ................................ 13

      1.   No Material Facts Are In Dispute, And Plaintiffs'
Complaint States Valid Claims Upon Which Relief Can
Be Granted. ......................................................................... 13

         (a)   Right Of Publicity. ....................................................... 14

         (b)   Trademark Infringement ................................................ 14

      2.   Plaintiffs Will Suffer Prejudice Absent A Default
Judgment. ............................................................................ 15

      3.   The Requested Damages Are Appropriate In Relation To
The Seriousness Of The Claims. ............................................. 16

      4.   Missguided's Default Is Not The Result Of Excusable
Neglect ................................................................................ 19

      5.   Public Policy Does Not Militate Against A Default
Judgment. ............................................................................ 20

   C.   The Court Should Award Monetary Damages And A Permanent
Injunction. ..................................................................................... 20

   D.   The Court Should Award Plaintiffs' Reasonable Attorney's Fees ....... 21

V.   CONCLUSION ...................................................................................... 22

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036, 1046 (9th Cir. 1999)..............................................................15

*Browne v. McCain*,
612 F. Supp. 2d 1118, 1123 (C.D. Cal. 2009)...............................................10

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175, 1180 (9th Cir. 1988)..............................................................21

*Clark v. America Online Inc.*,
2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000)...................................17

*Downing v. Abercrombie & Fitch*,
265 F.3d 994, 1001 (9th Cir. 2001)................................................................14

*Ebates Inc. v. Cashbag.co.za*,
2018 WL 6816113, at *5 (N.D. Cal. Oct. 30, 2018).....................................13

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388, 319 (2006) ...............................................................................21

*Eitel v. McCool*,
782 F.2d 1470, 1471-72 (9th Cir. 1986) ..................................................9, 16

*Elektra Entertainment Group Inc. v. Bryant*,
No. CV 03-6381, 2004 WL 783123 at *1 (C.D. Cal. Feb. 13, 2004)..............9

*Friedman v. PopSugar, Inc.*,
2018 WL 6016963, at *6-10 (C.D. Cal. Oct. 29, 2018)................................12

*Govino, LLC v. WhitePoles LLC*,
2017 WL 6442187, at *4 (N.D. Cal. Nov. 3, 2017).......................................13

*Hoffman v. Capital Cities/ABC, Inc.*,
33 F. Supp. 2d 867, 872–73 (C.D. Cal. 1999)...............................................17

*Lahoti v. Vericheck, Inc.*,
636 F.3d 501, 510 (9th Cir. 2011)..................................................................22

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,
725 F. Supp. 2d 916, 919 (C.D. Cal. 2010).................................9, 15, 16, 20

*Levi Strauss & Co. v. J. Barbour & Sons Ltd.*,
2019 WL 1117533, at *4 (N.D. Cal. Mar. 11, 2019) .....................................12

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218, 1227–28 (9th Cir. 2011) ..................................................10, 11

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

ii

*Pepsico,*
  238 F. Supp. 2d at 1176...........................................................................16

*Pom Wonderful LLC v. Pur Beverages LLC,*
  2015 WL 10433693, at *5 (C.D. Cal. Aug. 6, 2015)................................21

*RD Legal Funding, LLC,*
  2013 WL 1767962 at *3............................................................................22

*Renovation Realty, Inc. v. Renovation & Design, Inc.,*
  2018 WL 6168273, at *5 (S.D. Cal. Nov. 26, 2018) ...............................12

*Rosen v. Terapeak, Inc.,*
  2015 WL 12724071, at *6 (C.D. Cal. Apr. 28, 2015) .............................12

*Solano v. Playgirl, Inc.,*
  292 F.3d 1078, 1090 (9th Cir. 2002)........................................................17

*United States Futsal Fed'n v. USA Futsal LLC,*
  2018 WL 2298868, at *8 (N.D. Cal. May 21, 2018) ...............................11

*Wendt v. Host Intern., Inc.,*
  125 F.3d 806, 811 (9th Cir. 1997)............................................................14

*Yahoo! Inc. v. La Ligue Contre Le Racisme,*
  433 F.3d 1199, 1206 (9th Cir.2006).........................................................10

## STATUTES

15 U.S.C. § 1051 ..................................................................................................9

15 U.S.C. § 1114(1) ........................................................................................1, 7

15 U.S.C. § 1116(a) ...........................................................................................20

15 U.S.C. § 1117 ..........................................................................................16, 19

15 U.S.C. § 1117(a) ...........................................................................................22

15 U.S.C. § 1125(a) .........................................................................................1, 7

28 U.S.C. § 1331 ..................................................................................................9

28 U.S.C. § 1338(a) .............................................................................................9

28 U.S.C. § 1367(a) .............................................................................................9

Cal. Civ. Code § 3344 ................................................................................passim

Cal. Civ. Code § 3344(a) ........................................................................14, 19, 21

Fed. R. Civ. P. 55(a) ...........................................................................................8

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Fed. R. Civ. P. 55(b) ..........................................................................................8

Fed. R. Civ. P. 55(b)(2) ...............................................................................8, 13

Fed. R. Civ. P. 8(b)(6) .......................................................................................9

L. R. 55-3 ........................................................................................................22

L.R. 55-1 ....................................................................................................8, 13

L.R. 55-2 ........................................................................................................13

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

MOTION FOR DEFAULT AND DEFAULT JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This lawsuit was filed to enjoin and remedy a series of willful infringements by Defendants Missguided USA (Finance), Inc. ("Missguided USA") and Missguided Limited (collectively, "Missguided" or "Defendants") of the rights of publicity and trademarks owned and controlled by Kim Kardashian West and her loan-out corporation, Kimsaprincess, Inc. (collectively, "Plaintiffs" or "Kardashian"). Kardashian is a world-famous television celebrity, model, and spokesperson who has been immensely successful in developing and promoting her own fashion, beauty, and other products that have sold under the famous "Kardashian" name and related trademarks. She is also highly sought after as a paid spokesperson for third-party products. With Kardashian enjoying one of the largest social media followings of *any* celebrity in the world, companies pay enormous sums of money to engage Kardashian to help promote their brands. Missguided, on the other hand, has chosen to appropriate Kardashian's name and image to promote its brand *without* her consent and *without* compensating her.

Missguided is a successful "fast fashion" company that has become infamous for knocking-off the clothing designs worn by famous celebrities like Kardashian. Whether or not the copying of clothing designs is permissible, Missguided has used Kardashian's trademarked name and images to promote and sell clothing on its U.S.-facing website, www.missguidedus.com. That site is riddled with images of and references to Kardashian, which are used to promote the brand and particular items of clothing "inspired by" her. Missguided's use of Kardashian's name and likeness is so pervasive that consumers have begun to erroneously conclude that she is affiliated with the company. Missguided's unauthorized uses of Kardashian's name and likeness are *indefensible* violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), as well as violations of her right publicity under California common law and California Civil Code § 3344.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Missguided and its counsel are fully aware of this lawsuit *and this motion*. Kardashian's attorneys have communicated in writing and over the telephone with Missguided's counsel on several occasions to discuss Plaintiffs' claims, to notify counsel of the filing of this action, and most recently, to notify Missguided of the default judgment Plaintiffs would be requesting. In those discussions, Missguided's counsel indicated that his clients would not be appearing in the case for tactical reasons, and as promised, neither defendant has responded. All the while, Missguided *persists* in using Kardashian's name and likeness on its website: in the past several days, in fact, Plaintiffs' counsel purchased clothing from a page of the www.missguidedus.com website that features Kardashian.

The Clerk of the Court has entered default against Missguided USA. (*See* Dkt. No. 12.) Plaintiffs' prior request for entry of default against Missguided Limited, which was referred to this Court because the Defendant is a foreign entity (Dkt. No. 18), has not been ruled upon. By this motion, Plaintiffs respectfully request the entry of default against Missguided Limited, and seek entry of a default judgment against both Defendants enjoining them from further infringing Kardashian's rights, and awarding compensatory damages of Five Million Dollars ($5,000,000) and attorneys' fees in the amount of $103,600.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Kardashian's Success And Social Media Reach.

Kardashian is a television celebrity, model, and spokesperson. For over a decade, she has been featured on the reality television series *Keeping Up With The Kardashians*, which is broadcast in over 160 countries. (Kardashian Decl., ¶ 3.) She enjoys one of the largest social media followings of any celebrity anywhere in the world, including more than 120 million followers on Instagram, and close to 60 million followers on Twitter. (*Id.*, ¶ 6; *see also* Compl., ¶ 12.)

Kardashian promotes and sells a variety of products through her own companies, including a cosmetics line sold under the "KKW Beauty" mark and

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

a fragrance line sold under the "KKW Fragrance" mark. Further, Kardashian is also in demand as a paid spokesperson for third-party products. Because of her popularity and reach on social media, companies routinely pay Kardashian millions of dollars in fees to serve as a celebrity endorser. (*See* Compl. ¶ 1; Kardashian Decl., ¶ 13; Wilson Decl., ¶¶ 3-5.) A *single* social media post by Kardashian endorsing third-party products will garner a fee ranging from $300,000-$500,000. (*Id.*)

Kardashian is selective of the third-party companies with whom she chooses to partner and frequently turns down endorsement deals. (Compl., ¶ 14; Kardashian Decl., ¶ 7; Wilson Decl., ¶ 3.) When she does sign on as a spokesperson for third-party products or services, she often works closely with these partners to develop particular products for her endorsement. (Compl., ¶ 14; Kardashian Decl., ¶ 7.)

**B.    The Unauthorized Use Of Kardashian's Marks And Images.**

Plaintiffs own registered trademarks for KIM KARDASHIAN and KIM KARDASHIAN WEST in various classes, along with rights of publicity in Kardashian's name, image, and persona. (Compl., ¶¶ 41-43.) Disregarding these rights, Defendants have repeatedly used Kardashian's name and image without authorization to promote their brand and website, and to generate sales.

Missguided operates several websites that sell clothing. (Compl., ¶¶ 3, 16; Korn Decl., ¶ 7, Ex. 3.) Each of Missguided's websites targets a particular territory, such as www.missguided.co.uk and www.missguidedfr.fr. The website at issue here, www.missguidedus.com, is Missguided's U.S.-facing website. (*Id.*) Through these websites, Missguided specializes in selling "fast" and inexpensive clothing designs, which are often knock-offs of other companies' designs. (Compl., ¶ 16.) Missguided has become particularly well-known for copying designs worn by Kardashian and other celebrities, which it then offers for sale on its sites within days—sometimes even hours—of the celebrity appearing in public in the clothing. (*Id*.)

To promote these knock-offs, Missguided has brazenly misappropriated Kardashian's name and images, turning her into an unwilling endorser of the

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  Missguided brand. The www.missguidedus.com website has entire pages devoted to

2  the sale of clothing inspired by Kardashian, and on which Kardashian's name and

3  likeness are used *without her permission*, some of which are *still active* today. A

4  "crushin' on kim k" page on the website contains a "Shop Kim K" link, where

5  visitors to the website could buy clothes purportedly inspired by clothing that

6  Kardashian has worn:



7
8
9
10
11
12
13
14
15
16

17  (Compl., ¶ 17; Korn Decl., ¶ 8, Ex. 4.) A similar page from the site features

18  Kardashian *and* each of her well-known sisters:



19
20
21
22
23
24
25
26
27
28

4

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

(Compl., ¶ 18; Korn Decl., ¶ 9, Ex. 5.) Scrolling down from this screen, visitors see sections devoted to each of the Kardashian sisters, including the section below concerning Kim Kardashian West:



(Korn Decl., Ex. 5.) Here too, alongside Kardashian's name and image, is a "shop party dresses" link where consumers can purchase clothing inspired by her. This Kardashian-themed page of the website is *still* active, and clothing can *still* be purchased through the link provided there. (*Id.*, ¶ 9.)

Missguided has also repeatedly used Kardashian's name and likeness on its social media platforms to promote its www.missguidedus.com website. Shortly before this action was filed, after Kardashian posted a photo on Instagram of a dress that was made for her (below left), Missguided quickly responded with its own Instagram post (below right) boasting that it would be ripping off the design within "a few days":



(Compl., ¶ 20.) Missguided inserted Kardashian's Instagram username into its post, of course, to capitalize on her celebrity status and social media following in promoting the sale of its upcoming product. (*Id.*)

Missguided has posted numerous other photos of Kardashian on its Instagram feed—at times together with her husband and/or children—including the following:

 

(Compl., ¶¶ 21-22; Korn Decl., ¶ 10, Exs. 8-15.)

These social media posts containing Kardashian's name and image are *not* news reports. Missguided's entire Instagram page is an advertisement of its website and the clothing sold there. (Compl., ¶ 22.) The Instagram feed contains many posts linking to the website (*id.*), and some of the posts featuring Kardashian solicit sales of clothing from the website. The Instagram post pictured immediately above

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(right), for example, was captioned:

> **missguided** If you can't channel Kimmy K on a Fri-yay, when can you? Tap up our Insta Stories to shop this fire dress and more celeb style steals #missguided #kimkardashian #celebstyle.

(Korn Decl., Ex. 8.) Similarly, Missguided's "gold dress" Instagram post on the previous page invites users to "Swipe" to visit its website. Even where Missguided's posts do not directly solicit purchases, Missguided is using Kardashian's name and image to promote its brand, not to report news, as evidenced by its embossing of its "M" logo over photographs of Kardashian and her family. (*See* Compl., ¶ 22; Korn Decl., ¶ 10, Exs. 9-12.)

Missguided has so systematically misappropriated Kardashian's persona that commentators have mistakenly concluded that she is affiliated with the company and is working hand-in-hand with it to create "fast fashion" versions of her own clothing. (Compl., ¶ 23.) For example, the website www.thefashionlaw.com recently published an article entitled *Kim K and Missguided: Fast Fashion at its Quickest or a Marketing Ploy in Disguise*? The article speculated that "a coordinated marketing ploy between the mega-influencer [Kardashian] and the millennial-centric fashion company" might exist. (Compl., ¶ 23; Korn Decl., ¶ 11, Ex. 16.) The same article referred to others who had speculated that "'a thinly veiled collab' [is] at play between Missguided and Kim K." (*Id.*)

### C.   Missguided Has *Strategically* Defaulted In This Case.

Plaintiffs filed the Complaint in this case on February 20, 2019 asserting a first claim for violation of California Civil Code § 3344, a second claim for violation of the common law right of publicity, a third claim for false designation of origin in violation of 15 U.S.C. § 1125(a), a fourth claim for trademark infringement in violation of 15 U.S.C. § 1114(1), and a fifth claim for common law trademark infringement. (Dkt. No. 1.)

After the Complaint was filed, Plaintiffs' counsel, Gregory Korn,

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

communicated in writing and over the phone with Adam Morallee, an attorney at Brandsmiths in London, who has stated in writing and by phone that he represents Missguided. (Korn Decl., ¶¶ 3-4; Wilson Decl., ¶ 13.) Mr. Morallee declined Mr. Korn's request that he accept service on behalf of Defendants and stated that neither Missguided entity would be responding to the Complaint. (Korn Decl., ¶ 4.)

Plaintiffs proceeded to serve Missguided USA through its registered agent of service. (Dkt. No. 10.) Plaintiffs served Missguided Limited pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. (Dkt. No. 14.) Both Defendants failed to respond.

The clerk entered default against Missguided USA on March 29, 2019. (Dkt. No. 12). Plaintiffs requested the entry of default against Missguided Limited, which request was referred to the Court because the defendant is a foreign entity. (Dkt. Nos. 17-18.) The Court has not yet ruled on that request. Per the Court's Order requiring Plaintiffs to apply for default judgment against Missguided USA by May 3, 2019, and to avoid having to pursue default judgments piecemeal, Plaintiffs respectfully request entry of default against Missguided Limited and simultaneously seek a default judgment against both Defendants.

## III.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b) permits a district court to order a default judgment following an entry of default under Rule 55(a).  Fed. R. Civ. P. 55(b). Pursuant to the Local Rules, an application for a default judgment must set forth: (1) when and against what party default was entered; (2) the pleadings to which the default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemember's Civil Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2). *See* L.R. 55-1.

The grant or denial of a motion for default judgment is a matter within a court's discretion. *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

916, 919 (C.D. Cal. 2010) (citing *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03-6381, 2004 WL 783123 at *1 (C.D. Cal. Feb. 13, 2004)). In exercising this discretion, courts consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiffs' substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the public policy favoring decisions on the merits. *Id.* at 919-20 (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

Once a default has been entered, the factual allegations of the complaint (except those concerning damages) are deemed to have been admitted by the non-responding party. Fed. R. Civ. P. 8(b)(6); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 920. The Court must evaluate the complaint's unchallenged factual allegations to determine whether they establish liability and then determine the "amount and character" of the relief. *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 920.

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiffs Satisfy The Requirements For Entry Of A Default Judgment.**

The jurisdictional and other prerequisites for entry of a default judgment are all satisfied as follows:

#### 1.   **Subject Matter Jurisdiction.**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and it further has supplemental jurisdiction over the state law claims, which form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

#### 2.   **Personal Jurisdiction.**

This Court can exercise personal jurisdiction over both Defendants. "Minimum contacts" for purposes of specific jurisdiction are analyzed using a three-prong test: (1) the defendant must "purposefully direct his activities or consummate

9

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   some transaction with the forum or resident thereof; or perform some act by which

2   he purposefully avails himself of the privilege of conducting activities in the

3   forum"; (2) the claim must arise out of the forum-related activities; and (3) the

4   exercise of jurisdiction "must be reasonable." *Mavrix Photo, Inc. v. Brand Techs.,*

5   *Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011).

6   Trademark and right of publicity claims are deemed tort claims for purposes

7   of personal jurisdiction, *Browne v. McCain*, 612 F. Supp. 2d 1118, 1123 (C.D. Cal.

8   2009); and in tort cases, courts assess whether minimum contacts exist by

9   "inquir[ing] whether a defendant 'purposefully direct[s] his activities' at the forum

10  state, applying an 'effects' test that focuses on the forum in which the defendant's

11  actions were felt, whether or not the actions themselves occurred within the forum."

12  *Id.* at 1228 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199,

13  1206 (9th Cir.2006) (en banc)). This test considers whether the defendant

14  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

15  harm that the defendant knows is likely to be suffered in the forum state." *Id.*

16  (quoting *Yahoo!*, 433 F.3d at 1206).

17  Here, both Defendants have purposely directed their activities to the United

18  States and California in particular. The named Missguided entities are the operators

19  of the www.missguidedus.com website, as stated in the "terms of sale" page.

20  (*See* Korn Decl., ¶ 7, Ex. 3 ("We are Missguided Limited … and Missguided USA

21  (Finance) Inc."); *see also* Compl. ¶ 16.) Missguided sells product in the United

22  States through that website (as the domain name implies). (Korn Decl., ¶ 7, Ex. 3.)

23  This is stated on the "Terms of Use" page, which references delivery and shipping

24  prices for "USA" purchases, and on a "returns" page that provides links for

25  processing returns from the United States. (*Id.*)

26  News articles published in cooperation with Missguided tout its substantial

27  sales in the United States. An October 2016 www.racked.com news article entitled

28  *Missguided Is Sexy AF And Coming For Your Closet* contains quotes and

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  information from Missguided executives, including company founder Nitin Passi,

2  admitting that 10 percent of its online sales were to U.S. residents, that Missguided

3  clothing was being "carried in 80 Nordstrom stores" in the U.S., and even that some

4  production was occurring in Los Angeles. (Korn Decl., ¶ 12, Ex. 17.)

5  Consistent with those statements, Missguided clothing can be found for sale on a

6  Nordstrom's website. (*See* Korn Decl., ¶ 13, Ex. 18.)

7       These U.S. sales by Missguided include sales in California. Indeed, Plaintiffs'

8  attorney, located in California, *recently* purchased product from the

9  www.missguidedus.com website, for shipment to a California address. (Korn Decl.,

10  ¶ 9, Exs. 6-7.) Notably, the product purchased was one that Plaintiffs' counsel

11  located on the website's "5 party looks inspired by the Kardashians" page, using the

12  link provided for clothing inspired by Kim Kardashian West. (*Id.*)

13       The size of the California market permits the inference that a significant

14  portion of Missguided's U.S. sales are to California residents. *See Mavrix*, 647 F.3d

15  at 1230 ("Based on the website's subject matter, as well as the size and commercial

16  value of the California market, we conclude that [the defendant] anticipated, desired,

17  and achieved a substantial California viewer base."). Moreover, Missguided's

18  website evidences that it has specifically targeted California residents. The website,

19  for example, contains a page devoted to the Coachella music festival in Indio,

20  California, which boasts that Missguided "host[ed] a really … fabulous party at this

21  years' Coachella festival." (Korn Decl., ¶ 14, Ex. 19.) In addition, the site has a

22  "Festival Clothing" page that is locatable using the search term "Coachella." (Korn

23  Decl., ¶ 14.) By sponsoring events at Coachella, and by selling Coachella-themed

24  clothing, Missguided is obviously targeting California and the forum residents who

25  attend the famous festival in Indio. *See United States Futsal Fed'n v. USA Futsal*

26  *LLC*, 2018 WL 2298868, at *8 (N.D. Cal. May 21, 2018) (finding "individualized

27  targeting of California markets" by the defendant where its email and website

28  advertised in connection with an event in San Francisco).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Most important, to procure sales on its U.S.-facing website, Missguided has

2   used the name, image, and persona of an individual (Kardashian) who is known to

3   live in the Los Angeles area and is strongly associated with the forum. (Kardashian

4   Decl., ¶ 3.) This targeting of a California resident, in conjunction with Missguided's

5   many other contacts with the forum, is clearly sufficient to confer jurisdiction. *See*,

6   *e.g.*, *See Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, 2019 WL 1117533, at *4

7   (N.D. Cal. Mar. 11, 2019)("In cases alleging the violation of intellectual property

8   rights, specific jurisdiction may also exist 'where a plaintiff files suit in its home

9   state against an out-of-state defendant and alleges that defendant intentionally

10   infringed its intellectual property rights knowing [the plaintiff] was located in the

11   forum state.'") (citing and collecting cases); *Friedman v. PopSugar, Inc.*, 2018 WL

12   6016963, at *6-10 (C.D. Cal. Oct. 29, 2018) (finding personal jurisdiction in a

13   copyright and right of publicity case where a pop culture website used the name and

14   image of a blogger who lived in the forum and was closely associated with the

15   "beachy, Southern California lifestyle"); *Rosen v. Terapeak, Inc.*, 2015 WL

16   12724071, at *6 (C.D. Cal. Apr. 28, 2015) (recognizing that "Ninth Circuit

17   precedent provides for a finding of personal jurisdiction in the plaintiff's forum

18   where a defendant willfully infringes the intellectual property rights with knowledge

19   of the plaintiff's place of residence").

20   In short, Missguided has purposefully directed its sales and marketing at

21   California consumers; it has infringed the intellectual property rights of a known

22   forum resident; and it has done so with knowledge that the harm of these violations

23   would be felt in California. *See Renovation Realty, Inc. v. Renovation & Design,*

24   *Inc.*, 2018 WL 6168273, at *5 (S.D. Cal. Nov. 26, 2018) ("In an action for

25   trademark infringement, it is foreseeable that the economic harm suffered by the

26   owner of a trademark will be felt in the owner's home state.").

27   The requirement of "purposeful direction" is easily satisfied for these reasons.

28   The second prong of the minimum contacts test is also easily met: Kardashian's

12

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1 claims arise out of Missguided's contacts with California. Lastly, while the exercise

2 of jurisdiction is manifestly reasonable in light of Missguided's targeting of

3 California consumers and its targeting of a California resident with tortious conduct,

4 "it is the burden of the nonresident defendant to present a 'compelling case' that

5 asserting jurisdiction would be unreasonable," *Ebates Inc. v. Cashbag.co.za*, 2018

6 WL 6816113, at *5 (N.D. Cal. Oct. 30, 2018), and "Defendants have waived their

7 opportunity to make this showing by failing to participate in this litigation." *Govino,*

8 *LLC v. WhitePoles LLC*, 2017 WL 6442187, at *4 (N.D. Cal. Nov. 3, 2017).

9 **3.    Fed. R. Civ. P. 55 and L.R. 55-1.**

10     Entry of a default judgment is proper under Fed. R. Civ. P. 55(b)(2) and L.R.

11 55-1. Missguided USA's default was entered. (Dkt. No. 12.) The entry of a default

12 and default judgment of Missguided Limited is also proper, because it failed to

13 respond after being lawfully served under the Hague Convention. (Dkts. No. 14,

14 17.) Neither Defendant is a minor, incompetent person, or person subject to the

15 Servicemembers Civil Relief Act. (Korn Decl., ¶ 2.)

16     No notice of this application is required pursuant to Fed. R. Civ. P. 55(b)(2)

17 because the Missguided defendants have not appeared in the action. Pursuant to

18 L.R. 55-2, however, Plaintiffs' counsel have provided written notice to

19 Missguided's counsel of this application and the amount of damages and attorneys'

20 fees being requested. (Korn Decl., ¶ 5, Ex. 2.)

21 **B.    The Entry Of Default Judgment Is Warranted.**

22     Under the multi-factor test employed by courts in this Circuit and set forth

23 *supra*, Plaintiffs are entitled to a default judgment against Defendants.

24

25 **1.    No Material Facts Are In Dispute, And Plaintiffs' Complaint**

26 **States Valid Claims Upon Which Relief Can Be Granted.**

27     There are no material facts in dispute: Missguided's misappropriation of

28 Kardashian's name, image, and registered KIM KARDASHIAN WEST trademark

13

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   is evident on the face of its website and Instagram feed. (*See* Compl., ¶¶ 17-19;

2   Korn Decl., Exs. 4-5.) Based on these uncontroverted facts, Plaintiffs plead

3   meritorious claims for violation of Kardashian's rights of publicity and trademarks:

4                       **(a)      Right Of Publicity.**

5          In California, to state a claim for appropriation of name or likeness under the

6   common law right of publicity, a plaintiff must allege and prove: (1) the defendant's

7   use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to

8   defendant's advantage, commercially or otherwise; (3) lack of consent; and (4)

9   resulting injury. *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 811 (9th Cir. 1997).

10  The common law right of publicity protects against appropriation of plaintiff's

11  identity by means of using the plaintiff's name and likeness, among other things. *Id.*

12  Similarly, California Civil Code § 3344 provides in relevant part: "Any person who

13  knowingly uses another's name, voice, signature, photograph, or likeness, in any

14  manner, on or in products, merchandise, or goods, ... without such person's prior

15  consent, ... shall be liable for any damages sustained by the person or persons

16  injured as a result thereof." Civ. Code § 3344(a); *see also Downing v. Abercrombie

17  & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (holding that common law and statutory

18  right of publicity claims require proof of the same elements).

19         The Complaint, the allegations of which are deemed admitted, alleges that

20  Missguided has used Kardashian's name and image, without consent, for the

21  commercial purpose of advertising and selling clothing, thereby injuring

22  Kardashian. (Compl., ¶¶ 17-39.) These allegations state a claim for violation of the

23  right of publicity; and indeed, Missguided's wholesale appropriation of

24  Kardashian's name and likeness for commercial purposes is the epitome of a right of

25  publicity violation, with no possible First Amendment defense. *See Downing*, 265

26  F.3d at 1002 (holding that use of individual's photograph in Abercrombie & Fitch

27  catalog was not protected by the First Amendment as a matter of law).

28                      **(b)      Trademark Infringement.**

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ᴿᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   "To establish a trademark infringement claim under section 32 of the

2   Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act,

3   [the plaintiff] must establish that [the defendant] is using a mark confusingly similar

4   to a valid, protectable trademark of [the plaintiff's]." *Brookfield Commc'ns, Inc. v.*

5   *W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). The allegations of the

6   Complaint, which are deemed true, establish valid claims for trademark

7   infringement under the Lanham Act and California common law. Plaintiffs own

8   valid, registered trademarks for the use of KIM KARDASHIAN and KIM

9   KARDASHIAN WEST in International Class Nos. 35 and 41 in connection with,

10  *inter alia*, entertainment services, advertising, and the promotion of brands and

11  goods. (Compl. ¶¶ 41-43.) Missguided has used these exact marks, or confusingly

12  similar variations, by using the names "Kim Kardashian" and "Kardashian" on its

13  website and in its social media posts. (*Id.* ¶¶ 17 *et seq.* and ¶ 44.) Plaintiffs did not

14  consent to the use of their marks. (*Id.* ¶¶ 2, 4, 45, 47.) And Missguided's

15  unauthorized use of Kardashian's marks is likely to confuse consumers into

16  believing she is affiliated with, or sponsors or endorses, Missguided and its website

17  and products. (*Id.* ¶ 45.) Indeed, *actual* confusion has already occurred. (*Id.* ¶ 23.)

18         **2.    Plaintiffs Will Suffer Prejudice Absent A Default Judgment.**

19         Plaintiffs will suffer prejudice absent entry of a default judgment.

20  Because Defendants failed to appear, Plaintiffs have no other recourse without a

21  default judgment. *See Landstar Ranger, Inc.*, 725 F. Supp. 2d at 920 ("Denying

22  default judgment here would leave Landstar without a proper remedy.")

23         Further, Plaintiffs would suffer prejudice if the end result of this action and

24  the message sent to the public is that Missguided can willfully violate their rights

25  with impunity. Kardashian is a frequent target of infringers like Missguided, and she

26  and her counsel diligently police her trademarks and rights of publicity. (Kardashian

27  Decl., ¶ 11; Wilson Decl., ¶ 11.) To allow companies like Missguided to use

28  Kardashian's name and likeness without authorization, and without consequence,

1   threatens irreparable harm to her reputation and business interests by making her the
2   unwitting spokesperson for products that she does not endorse, by confusing the
3   public into believing she is associated with the infringer, by diluting the value of her
4   brand, and by undermining her efforts to negotiate endorsement deals with other
5   parties. (Kardashian Decl., ¶¶ 9-10; Wilson Decl., ¶¶ 11-12.) The negative press that
6   Kardashian has endured because of Missguided's use of her name and image, which
7   has caused commentators to speculate that she is conspiring with Missguided,
8   illustrates that the harm is real and not theoretical. (Compl., ¶ 23.)

9        Entry of a default judgment will confirm Missguided's wrongdoing. It will
10  validate Kardashian's efforts to police her intellectual property, as she *must* do to
11  avoid the dilution of her rights and possibly even claims of waiver or abandonment.
12  It will further dis-incentivize others from infringing Kardashian's rights in the same
13  way. Conversely, allowing willful infringers like Missguided to circumvent liability
14  by failing to respond to a complaint would be enormously harmful to Kardashian's
15  rights and her future prospects of protecting them.

16           **3.**      **The Requested Damages Are Appropriate In Relation To**
17                  **The Seriousness Of The Claims.**

18       In determining whether to award a default judgment, courts balance "the
19  amount of money at stake in relation to the seriousness of the Defendant's conduct."
20  *Pepsico*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1471-1472; *Landstar*
21  *Ranger, Inc.*, 725 F. Supp. 2d at 921. The damage award requested here, while
22  sizeable, is entirely consistent with law and appropriate given the brazenness of
23  Missguided's conduct.

24       Due to Missguided's failure to appear, it is impossible to establish its
25  revenues or profits attributable to its trademark infringement—the remedy that
26  would traditionally be sought and recovered under the Lanham Act for a willful
27  trademark infringement. *See* 15 U.S.C. § 1117 (entitling plaintiff to award of
28  "defendant's profits"). Accordingly, Plaintiffs are seeking the measure of damages

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1    that is available on their right of publicity claims.

2        Damages on a right of publicity claim may be measured by the "fair market

3    value of the right to use plaintiff's name or likeness in the manner in which it was

4    used by defendant." *Clark v. America Online Inc.*, 2000 WL 33535712, at *8 (C.D.

5    Cal. Nov. 30, 2000); *see also Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1090 (9th Cir.

6    2002) (holding the "measure of damages" on a Section 3344 claim "includes the

7    economic value of the use of an individual's name and likeness"); *Hoffman v.*

8    *Capital Cities/ABC, Inc.*, 33 F. Supp. 2d 867, 872–73 (C.D. Cal. 1999) (holding that

9    $1.5 million award to actor Dustin Hoffman for use of his name and likeness in a

10   magazine "represents the fair market value of the right to utilize Mr. Hoffman's

11   name and likeness in the manner in which it was used by *Los Angeles Magazine*"),

12   *rev'd on other grounds,* 255 F.3d 1180 (9th Cir. 2001).

13       The accompanying declarations of Kim Kardashian West and Todd Wilson,

14   her transactional attorney, substantiate that the fair market value of Missguided's

15   many uses of Kardashian's name and likeness is, *conservatively*, no less than $5

16   million. Kardashian is highly demanded as an endorser of third-party brands in a

17   wide variety of industries, including the apparel and cosmetics industries.

18   (Kardashian Decl., ¶ 13; Wilson Decl., ¶¶ 3-5.) Kardashian has entered into *several*

19   endorsement deals worth millions of dollars each to allow third parties to use her

20   name and image to promote their products or services. (*Id.*) Frequently, those deals

21   provide for advances of several million dollars, *plus* running royalties, *plus* equity

22   interests in the licensee's company. (Wilson Decl., ¶¶ 3-7.)

23       A recent licensing deal by Kardashian provides a benchmark for assessing the

24   value of Missguided's use of Kardashian's name and image. In the past year,

25   Kardashian has executed a licensing deal with a company that manufactures

26   wearable consumer goods. (Wilson Decl., ¶ 7.) The licensee is entitled to use

27   Kardashian's name and likeness to promote and sell its products, and that is the

28   primary consideration under the license. (*Id.*) In consideration therefor, the licensee

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

17

1 has agreed to pay cash compensation *exceeding* $6 million *annually*, as well as

2 granting Kardashian a significant equity interest. (*Id*.)

3      In addition to longer term licenses like the one described above, single, one-

4 off uses of Kardashian's name and/or likeness also garner tremendous fees.

5 On numerous occasions, third-parties have paid Kardashian fees ranging from

6 $300,000 to $500,000 for a *single* Instagram post by her. (Kardashian Decl., ¶ 13;

7 Wilson Decl., ¶ 5.)

8      Unquestionably, the value of Missguided's uses of Kardashian's persona is

9 several multiples of the $300,000 to $500,000 that Kardashian receives for a *single*

10 Instagram post, and is in line with the value of the license discussed above. Using all

11 of the above-described deals as data points, the conservative fair market value of

12 Missguided's use of Kardashian's trademarks and images—which has been

13 continuing for well over a year—is no less than $5 million, and Kardashian would

14 never have licensed Missguided's use of her persona for less. (Kardashian Decl.,

15 ¶ 14; Wilson Decl., ¶¶ 8-9.) Missguided has devoted entire pages of its website to

16 Kardashian, which it uses to promote its brand and sell product. It has repeatedly

17 featured Kardashian in social media posts that advertise the brand and expressly

18 solicit sales of Missguided's products. (*See* Korn Decl., Exs. 8-15.) Because of the

19 frequency and substantiality of these misappropriations and the fact that they have

20 been occurring for years (and continue to this day), Missguided has effectively

21 turned Kardashian into an unwilling spokesperson for the company, thus allowing it

22 to tap into her enormous fan base and gain massive exposure.

23      The amount of these requested damages is significant but not

24 disproportionate. Missguided is an enormously successful company. Its public

25 statements in 2017 indicate that its sales that year exceeded £200 million. (Korn

26 Decl., Ex. 20.) The company was reported in the same year as having "been valued

27 at £700 million." (*Id.*, Ex. 21.) Further, Missguided's willful intellectual property

28 violations threaten to and have caused real harm. Kardashian has carefully cultivated

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʳᵈ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

her public persona, and her reputation and career as a spokesperson depend on her ability to control the uses of her name and likeness. (Kardashian Decl., ¶¶ 8-11; Wilson Decl., ¶¶ 10-12.) Unauthorized uses of Kardashian's name and likeness by infringers like Missguided dilute her brand. (Kardashian Decl., ¶¶ 8-11; Wilson Decl., ¶ 11.) They also threaten her ability to negotiate endorsement deals with law-abiding companies that seek her support, who will be less inclined to hire Kardashian if she is perceived by the public as indiscriminately endorsing a multitude of brands. (Kardashian Decl., ¶ 9; Wilson Decl., ¶ 11.)

Moreover, Missguided's tortious conduct has damaged Kardashian's credibility. While Kardashian has been a vocal opponent of the "fast fashion" trend (Kardashian Decl., ¶ 12), Missguided's extensive use of her name and likeness has led commentators in the fashion industry to accuse her of hypocritically working with Missguided to knock off the designer clothing she has worn.

Were this case tried on its merits, Plaintiffs would almost certainly recover an award exceeding what is requested here. At trial, they would have *additionally* been entitled to disgorge Missguided's profits attributable to the wrongdoing under their Lanham Act claims, *see* 15 U.S.C. § 1117, as well as under their Section 3344 claim. *See* Cal. Civ. Code § 3344(a) (entitling plaintiff to "any profits from the unauthorized use"). Plaintiffs could have also recovered an award of punitive damages under their Section 3344 claim. *See id.* ("Punitive damages may also be awarded to the injured party or parties."). Plaintiffs have elected not to seek punitive damages here. Accordingly, the recovery sought is not only proportional to the harm Kardashian has suffered, but it is a fraction of Plaintiffs' potential recovery in a trial on the merits.

### 4.    Missguided's Default Is Not The Result Of Excusable Neglect

Missguided's default is not the product of excusable neglect. Both Missguided entities were properly served, and Missguided's counsel indicated that Defendants were intentionally not responding. (Korn Decl., ¶ 4.)

### 5.      Public Policy Does Not Militate Against A Default Judgment.

Though courts generally favor deciding cases on the merits, Rule 55 provides for the entry of a default judgment in appropriate circumstances, and no public policy concerns are implicated by the entry of default judgment against Missguided. First and foremost, the general preference of resolving cases on their merits is of little import where, as here, Missguided's liability is apparent on the face of its www.missguidedus.com website. Plaintiffs would have clearly been entitled to summary adjudication of liability in their favor even if Missguided *had* appeared, so a default judgment merely confers upon Plaintiffs the victory they would have achieved were the case litigated on its merits.

Further, other public policy concerns weigh heavily in favor of awarding a default judgment. Missguided has availed itself of the privilege of conducting business in the United States. It has targeted the valuable intellectual property rights of a well-known resident of California. It has profited from the misappropriation of Kardashian's name and likeness. But it has made a strategic decision to flout this Court's jurisdiction and U.S. intellectual property laws by tactically defaulting in the case. A dangerous precedent is set if *this* is an effective way of avoiding liability in a U.S. court.

### C.      The Court Should Award Monetary Damages And A Permanent Injunction.

A motion for default judgment provides the plaintiff with an opportunity to "prove up" its damages. *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 923. The default judgment may not exceed the amount prayed for in the Complaint. *Id.* The Complaint here prayed for damages of no less than $10 million. (Compl., ¶¶ 28, 36, 46, 52.) For all of the reasons discussed above, an appropriate award to Plaintiffs would be no less than $5,000,000.

To prevent further violations of Plaintiffs' rights, the Court should also award Plaintiffs a permanent injunction pursuant to the Lanham Act, 15 U.S.C. § 1116(a),

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

prohibiting Defendants from using Plaintiffs' name, images, likeness, persona, and trademarks in connection with any product or service sold, marketed, or distributed by them. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). A permanent injunction is appropriately granted where the plaintiff shows (1) that it has suffered irreparable injury, (2) that there is no adequate remedy at law, (3) that the balance of the hardships are in its favor, and (4) that an injunction is in the public's interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 319 (2006) These elements are easily satisfied. Missguided's tortious conduct has irreparably harmed Kardashian by robbing her of her right to control her reputation, and by fomenting *actual* confusion among the public, who has mistakenly concluded by virtue of Missguided's use of her name and image that she is affiliated with the company. *See Pom Wonderful LLC v. Pur Beverages LLC*, 2015 WL 10433693, at *5 (C.D. Cal. Aug. 6, 2015) ("Loss of control over business reputation and damage to goodwill are cognizable irreparable harms in the trademark infringement context."). Plaintiffs have no adequate remedy at law for these infringements, particularly because an award of damages for past infringement does not ameliorate Missguided's *continuing* violations of Plaintiffs' rights. The balance of hardships weighs definitively in Plaintiffs' favor given that Missguided suffers no hardship from having to cease infringing Kardashian's rights. Finally, an injunction will further the public's interest by preventing Missguided from continuing to mislead the public into believing that the brand is associated with Kardashian.

###    D.    The Court Should Award Plaintiffs' Reasonable Attorney's Fees

Section 3344 of the California Civil Code entitles prevailing parties to an award of "attorney's fees and costs." Cal. Civ. Code § 3344(a). Section 1117(a) of the Lanham Act also authorizes a court to award reasonable attorney's fees to the

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  prevailing party in "exceptional" circumstances, 15 U.S.C. § 1117(a), including

2  where the infringing party acted maliciously, fraudulently, deliberately, or willfully.

3  *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510 (9th Cir. 2011).

4    Here, Missguided's willful violation of Kardashian's rights of publicity and

5  trademarks warrants an award of fees under Civil Code § 3344 and the Lanham Act.

6  Local Rule 55-3 provides a schedule for the calculation of attorney's fees on a

7  default judgment. *See* C.D. Cal. L.R. 55-3; *see also RD Legal Funding, LLC*, 2013

8  WL 1767962 at *3. Pursuant to the calculation set forth in L.R. 55-3, Plaintiffs

9  request fees in the amount of $103,600 (*i.e.*, $5,600 plus 2% of $4.9 million).

10 **V.    CONCLUSION**

11   For all of the foregoing reasons, Plaintiffs request that the Court grant this

12 Motion and enter a default judgment in the form lodged herewith.

13 DATED: May 3, 2019                     Respectfully submitted,

14                                        KINSELLA WEITZMAN ISER

15                                        KUMP & ALDISERT LLP

16

17

18                                        By:     */s/ Michael J. Kump*

19                                              Michael J. Kump

20                                              Attorneys for Plaintiffs

21                                              KIMSAPRINCESS, INC. and

                                               KIM KARDASHIAN WEST

22 /637739

23

24

25

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850